

## Stern & Eisenberg, PC
www.sterneisenberg.com

Steven P. Kelly, Esquire

1040 N. Kings Highway
Suite 407
Cherry Hill, New Jersey 08034
(609) 397-9200
Facsimile: (856) 667-1456

August 2, 2017

**VIA ELECTRONIC MAIL EXCLUSIVELY**
The Honorable Michael B. Kaplan, U.S.B.J
United States Bankruptcy Court
District of New Jersey, Trenton Vicinage
402 East State Street
Trenton, NJ 08608

    RE:    **In Re: Marsha Francis, Debtor**
             **Bankruptcy No.         17-10276-MBK**
             **Request for Clarification of Motion for Relief Returnable June 27, 2017**

The Honorable Michael B. Kaplan:

    As you may recall, my office represents The Bank of New York Mellon, et al, by and through its servicing agent Ocwen Loan Servicing, LLC with regard to the above-captioned bankruptcy matter. On June 27, 2017, a hearing was held before Your Honor with regard to a Motion for Relief (Annulment) filed by my office to which not only a responsive pleading was filed by the Debtor, but also arguments were held prior to Your Honor issuing an Order granting Relief from the Automatic Stay pursuant to Section 362 of the Bankruptcy Code.

    It should be noted that since the entry of Your Honor's Order, an Adversary Proceeding has since been filed by the Debtor seeking sanctions and injunctive relief against my office and our client for alleged violations of the Automatic Stay. The filing of the Adversary Proceeding is the basis for our request for clarity. After reviewing the transcript from that hearing, a copy of which is attached for your convenience, please accept this letter as our request for clarification as to the merits discussed on the returnable date.

Upon entering your decision from the bench, Your Honor indicated that the decision to grant stay relief, as opposed to annulment of the stay, was largely based on an inability to determine the purpose and/or feasibility of this case due to the Debtor's lack of legal title to the real property as well as the length upon which the case had presently been opened before this Honorable Court without a confirmed Plan. Additionally, it was argued that, at the time of the filing, Debtor did not have a cognizable legal interest in the property that would give rise to the Automatic Stay. Your Honor specifically noted to Debtor's counsel that Debtor had "bad possessory title, no legal title" in the real property. It was further confirmed by Debtor's counsel that there was in fact no legal title in the property possessed by the Debtor, and that her interest solely was a possessory interest.

Although the record reflects discussions regarding the Debtor's interest in the property and when those interests were or were not extinguished, there is no clear determination if Debtor's mere possessory interest in the property, at the time of filing, fell within the purview of Section 362(a) of the Bankruptcy Code, or whether, a mere possessory interest in real property is insufficient to stay a sale of a property to which Debtor had no legal interest, or the recording of a deed on a property to which Debtor had no legal interest, under relevant case law.

In light of the pending Adversary Proceeding, it is our belief that clarification as to the decision of this Honorable Court on the returnable date would, in the interest of judicial economy, benefit all of the parties to that Adversary Proceeding in terms of assessing the validity of the allegations set forth as well as facilitating any settlement negotiations if warranted. If Your Honor would prefer such a request to be done by a more formal Application before the Court, I would kindly ask that you notify my office so that such an Application may be timely filed.

Thank you, in advance, for any guidance Your Honor may be able to provide in this matter, and if you have any questions, please do not hesitate to contact my office to discuss them.

Respectfully submitted

**STERN & EISENBERG, P.C.**

By: _____
Steven P. Kelly, Esquire

SPK/
Encl.
cc:   Mark W. Ford, Esquire, counsel for Debtor (via electronic mail)
      Albert Russo, Chapter 13 Standing Trustee (via electronic mail)

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

IN RE:                              .    Case No. 17-10276(MBK)
                                    .
MARSHA FRANCIS,                     .
                                    .
                                    .    402 East State
                                    .    Trenton, NJ 08608
            Debtor.                 .
                                    .    June 27, 2017
. . . . . . . . . . . . . . . .          12:19 p.m.

       TRANSCRIPT OF MOTION FOR RELIEF FROM AN ANNULMENT OF THE STAY
                   BEFORE HONORABLE MICHAEL B. KAPLAN
                  UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtor:             Law Office of Mark W. Ford, LLC
                            By: MARK W. FORD, ESQ.
                            4 1/2 North Broadway
                            Gloucester City, NJ  08030

For the Bank of New         Stern & Eisenberg, P.C.
York Mellon, et al.:        By: STEVEN P. KELLY, ESQ.
                            1581 Main Street, Suite 200
                            Warrington, PA  18976

For the Trustee:            Office of the Standing Chapter 13
                               Trustee
                            By: ERIK COLLAZO, ESQ.
                            CN 4853
                            Trenton, NJ  08650


Audio Operator:             Kathleen Feeley


Proceedings recorded by electronic sound recording, transcript
                produced by transcription service.

J&J COURT TRANSCRIBERS, INC.
268 Evergreen Avenue
Hamilton, New Jersey 08619
E-mail:  jjcourt@jjcourt.com

(609) 586-2311    Fax No. (609) 587-3599

1         THE COURT: Number 81, Marsha Francis, motion for
2 relief. Good morning, counsel.
3         MR. KELLY: Good morning -- or good afternoon, Your
4 Honor.
5         THE COURT: Good afternoon.
6         MR. KELLY: Steven Kelly, Stern and Eisenberg, on
7 behalf of Ocwen Loan Servicing, servicer for The Bank of New
8 York.
9         MR. FORD: Mark Ford appearing on behalf of the
10 debtor, Marsha Francis.
11         THE COURT: All right, this is for relief from the
12 co-debtor stay of Alvin Francis?
13         MR. KELLY: It's from both annulment of the regular
14 stay and the co-debtor stay.
15         THE COURT: Okay.
16         MR. KELLY: I think when it was clicked, co-debtor
17 stay was picked first so that one showed up.
18         THE COURT: All right, let me hear the motion.
19         MR. KELLY: Yes, Your Honor. We are seeking relief
20 under 362 for an annulment of the stay as to both Alvin Francis
21 who's the non-filing co-debtor and also Marsha Francis with
22 regard to the property located at 12 Stafford Lane,
23 Willingboro, New Jersey.
24         As we set forth in our moving papers, Ms. Francis who
25 is the actual debtor in this case has no -- is not on the note,

1 not on the mortgage.  She only is on the actual -- she's not
2 listed on the deed, but she does have a possessory interest as
3 she is married to the obligor and the record holder.
4 　　　　We were seeking annulment in the fact of essentially
5 to ratify a sheriff sale that happened on January 12th of 2017.
6 We were not notified of the bankruptcy when we ran any kind of
7 searches on Ms. Francis.  She would not show up in our systems.
8 Looking at the actual docket, it looks as if a change of
9 address was filed from my office several weeks after the case
10 was filed on February 2nd.  Seeking a determination of bad
11 faith on the part of this filing.  This is the debtor's second
12 case in the last year.  There was a foreclosure judgment
13 entered in May of 2016 in the amount of 125,000.  Schedule A of
14 the debtor lists her particular share as 67,000 so a collective
15 whole between her and Mr. Francis is about 134.
16 　　　　We believe that the filing was done with bad faith in
17 order to try to prevent any further sheriff sale.  The first
18 case was dismissed back shortly before this case was filed for
19 lack of a 341 and lack of payments to the trustee.  Having
20 looked further at this case since the filing, I do not believe
21 any such plan is feasible.  Schedule J shows a negative income
22 of $2,160.  The plan is proposing to pay $120 a month.  I'm not
23 really sure where the money is going to come from.  Looking for
24 a loan modification is the way in which they wish to cure our
25 default, however, considering she's not on the note or the

mortgage, she is not going to get a loan modification on the note. She is not responsible for it.

Looking further at the statements and the schedules, Schedule I says that the debtor's income monthly is $1,335 from her full-time employment. There are no tax deductions listed in there or on Schedule J. The confusion for me is the statement of financial affairs says that to date the debtor has made a total of $9,000. This case was filed on June 6th. I do not know if she's only making $1,300 a month, how she made 9,000 in the first six days of the month.

MR. FORD: This case wasn't filed June 6th -- January 6th.

THE COURT: This case was filed January 6.

MR. KELLY: January.

THE COURT: Well, let me ask a question then. If it's January 6th and this is the second case within a year?

MR. KELLY: There was a motion to extend filed by the --

THE COURT: Okay, and that was granted?

MR. KELLY: That was granted.

MR. FORD: That was granted.

MR. KELLY: The unemployment is also listed on the statement of financial affairs which is not listed on the monthly income certificate. It's not listed on Schedule I. I do not know where this is going. I think the totality of

```
 1  everything as a whole shows that this was not done in good
 2  faith.  How is she going to modify a loan she's not responsible
 3  for?  We would seek a ratification and an annulment of the stay
 4  as to the filing date.  I did get a chance to look at debtor's
 5  response yesterday.  I'm not really sure if it's a cross
 6  motion.  There seems to be a sanctions request, however, there
 7  was no cross notice of motion service filed so I'm not really
 8  sure what path that is going.
 9            There is also an indication of some type of standing
10  issue, however, that was also raised in debtor's 32-count
11  response of the mortgage foreclosure so I would argue that that
12  issue in and of itself is barred by Rooker-Feldman.  State
13  court is where that issue should be raised if there is an issue
14  outlying.  In the debtor's first case finally, Your Honor,
15  Schedule A does not list her as an owner of the property.
16  Schedule D does not have our loan on it.  I'm not really sure
17  how a case dismissed and filed in the same year have two
18  different indications of monies and ownership interest so we
19  would seek annulment of the stay.
20            THE COURT:  All right, thank you.
21            MR. KELLY:  You're welcome.
22            THE COURT:  Counsel?
23            MR. FORD:  Well, let me help out.  I first note that
24  the debtor's case filed last year that she filed pro se was a
25  challenge to a non-attorney and she was not successful in that
```

1 case and that case did get dismissed, Your Honor. I'm really
2 surprised to hear that they're now claiming that this case was
3 filed in bad faith after, you know, we had to file a motion to
4 prove that she had good faith going on and there was no
5 opposition filed. I'll note that the -- our motion to extend
6 the stay was postponed several times for proper service to make
7 sure that they got proper service on it.
8     THE COURT: But overall where is the case going if
9 she has no possessory -- she has possessory --
10     MR. FORD: She has --
11     THE COURT: -- bad possessory title, no legal title,
12 correct?
13     MR. FORD: She does not have legal title to the
14 property. She has a very real equitable property interest in
15 the property. It's been --
16     THE COURT: Wasn't that foreclosed? There's a
17 foreclosure judgment. Was she named in the foreclosure?
18     MR. KELLY: Yes, Your Honor.
19     THE COURT: So any legal or equitable interest would
20 have been foreclosed. She has a possessory interest at this
21 point. And how does that -- how can that --
22     MR. FORD: Her actual interest isn't extinguished
23 until it's sold at a valid sheriff sale, you know, not one
24 that's after the bankruptcy has been filed, Your Honor.
25     THE COURT: Well, her interest was foreclosed. The

1 foreclosure judgment dictates -- would dictate her rights in
2 the property. The sale is the -- would transfer those rights.
3 At this point there's just a judgment, correct?
4        MR. FORD: Right.
5        THE COURT: I guess we go back to the -- I guess I'm
6 stumbling because I'm going back. Where are we going again
7 with her right -- how is she reorganizing?
8        MR. FORD: Well --
9        THE COURT: Through what sources?
10        MR. FORD: Concerning the loan modification, she
11 cannot, of course, do a loan modification on her own. She has
12 to have the cooperation of her spouse and she does have the
13 cooperation of her spouse. I'll note they are both present
14 here in the courtroom and I mean he's willing to cooperate in
15 the loan modification process. The fact that she doesn't have
16 a right on her own to get a loan or receive a loan modification
17 is not going to prevent that from happening, Your Honor. It's
18 not --
19        THE COURT: Why didn't he file?
20        MR. FORD: I'm not sure why he didn't file.
21        THE COURT: Mr. Collazo, where does the case stand?
22        MR. COLLAZO: Your Honor, there's a confirmation
23 hearing scheduled for August 8th at this point, Your Honor. We
24 were supposed to have documents submitted for a 341(a) which
25 has not been held. I believe all documents have now been

1  submitted.  I believe it was required that the 341(a) be held
2  by June 30th, which hasn't even been scheduled yet so --
3          THE COURT:  What was to be held by June?
4          MR. COLLAZO:  Excuse me?
5          THE COURT:  Repeat that.
6          MR. COLLAZO:  I said that documents were supposed to
7  be in by the 15th.
8          THE COURT:  Oh, the documents.
9          MR. COLLAZO:  That was -- last time this was on we
10 asked that all documents be in by the 15th and that the 341 be
11 scheduled and held by the 30th of June.  At this point there's
12 still no 341 scheduled even though the documents are in.  So
13 the 341 probably wouldn't be held 'til some time in the end of
14 August at this point, so we might end up even having to adjourn
15 the confirmation again.
16         THE COURT:  For a case that was filed in January?
17         MR. COLLAZO:  January 6th, Your Honor.
18         THE COURT:  Okay.  Mr. Ford, anything else you wish
19 to add?
20         MR. FORD:  Yes, Your Honor.  Well, Your Honor, in
21 this case the creditor has proceeded I might add in bad faith
22 in having to place -- hold the sheriff sale post bankruptcy
23 filing and after receiving notices from the bankruptcy court
24 and they've ignored other notices sent to them.  And at this
25 point they're asking the Court what to do with their bad

9

1  behavior.  They want to be rewarded for their bad behavior and
2  have -- validate all the things they did in violation of the
3  bankruptcy stay.
4       You know, Your Honor, I'm really -- if anything, you
5  know, in a court of equity there's this doctrine of unclean
6  hands.  If you come in and you've done wrong to get to where
7  you are, the Court isn't going to reward you for the wrong that
8  you've already done.  No, actually, you can be denied relief
9  because of the wrong that you've done and I would submit on
10 that, Your Honor.
11      THE COURT:  Counsel, you're seeking annulment of the
12 stay to do what specifically?
13      MR. KELLY:  At this juncture we cannot -- the
14 possessory interest still exists.
15      THE COURT:  Right.
16      MR. KELLY:  The sheriff sale happened.  Sheriff's
17 deed was recorded.  That was all before the change of address
18 which notified -- the notice that went to our client went to an
19 address of my law firm that does not exist.  It was changed on
20 February 2nd, of 2017, already a month almost after the sale
21 and the deed.  We can't displace the possessory interest
22 because of this bankruptcy because it is an equitable interest
23 the fact that she possesses a right to live there.  So we're
24 seeking annulment so that we can move forward at this juncture.
25      THE COURT:  Why not simple stay relief?

WWW.JJCOURT.COM

1  MR. KELLY: Stay relief would be an alternative. I
2  was just looking for something because I knew the argument
3  based on counsel's response was that with the prior actions --
4  that's why I cited in my moving papers the fact that the
5  possessory interest wasn't enough to stop the sheriff sale. So
6  either form of relief. I can always submit an amended order
7  moving forward. It would honestly be up to Your Honor whether
8  --
9  THE COURT: I'm prepared to give stay relief because
10 I don't see where this case is going forward. I'm not going to
11 ratify what was done prior to it so I'll grant stay relief
12 because the case doesn't seem after now being close to -- more
13 than six months and without a 341 meeting, without documents
14 being delivered timely, not moving forward for reorganization,
15 the case is proffered is being dependent upon a loan
16 modification for a debtor who's not entitled to seek the loan
17 modification. So stay relief is granted in lieu of the
18 annulment of the automatic stay --
19 MR. KELLY: I'll submit a --
20 THE COURT: -- and you can proceed in state court as
21 appropriate. And then the co-owners can do -- can seek
22 whatever relief appropriate again in the bankruptcy court if
23 appropriate.
24 MR. KELLY: Thank you, Your Honor. I'll submit a
25 revised order.

1  THE COURT: Thank you.
2  MR. KELLY: Thank you, Your Honor.
3  MR. FORD: Thank you, Your Honor.
4  THE COURT: Thank you, counsel.
5              * * * * *

# C E R T I F I C A T I O N

I, MARY POLITO, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, and to the best of my ability.

/s/ Mary Polito
_____
MARY POLITO
J&J COURT TRANSCRIBERS, INC.        DATE: July 31, 2017